# EVERARD v STATE OF FLORIDA

## Case No. 90-0027 AC (A) 02 (Lower Court Case No. 88-9824 MM A02)

Fifteenth Judicial Circuit, Palm Beach County

January 24, 1991

### APPEARANCES OF COUNSEL

**Charles W. Musgrove, Esquire,** for appellant.

**David Bludworth,** State Attorney, and **Robert S. Jaegers,** Assistant State Attorney, for appellee.

Before OFTEDAL, RAPP, STEVENSON, JJ.

## OPINION OF THE COURT

PER CURIAM.

Affirmed. On April 12, 1988, Appellant was arrested and charged with indecent exposure in violation of F.S. § 800.03 (1987).

A patrolman with the Palm Beach Gardens Police Department was on patrol in the Tanglewood West apartment complex when several female juveniles advised him that a man stands in front of his rear patio sliding glass door completely nude masturbating. The victims point out the sliding glass door to the patrolman. Based upon the above information Detective David O'Neill conducted a surveillance of that apartment.

The patio door faces the main road leading into the Tanglewood West Apartments and is approximately fifteen feet from the roadway. Detective O'Neill positioned himself across the street about thirty-five to forty feet from the sliding glass door. He had a clear view of the door. The drapes were closed.

O'Neill testified he saw a hand unlock the sliding glass door and pull aside the drapes. He then observed a male fitting the description given by the victims peer through the drapes. The man (later identified as Alan Everard) was nude except for a pair of white briefs, and was fondling and exposing his sexual organs. O'Neill made these observations with his naked eye. However, he also used binoculars and a camera zoom lens to look closer and make sure he could identify the defendant.

Appellant moved to suppress O'Neill's observations alleging that the use of binoculars to peer into his home was a violation of his reasonable expectation of privacy, and that O'Neill had conducted an illegal search which cannot be justified under any warrant exception. Appellant also moved to dismiss on the ground that what he did was not a violation of the statute because he was not in a public place and not visible from the private premises of another. Both motions were denied by the trial court. Appellant pled no contest preserving the right to appeal the orders denying his motions but abandoning his right to contest the facts. He was sentenced to six months probation.

Florida Statutes, § 800.03 provides that

It shall be unlawful for any person to expose or exhibit his sexual organs in any public place or on the private premises of another, or so near thereto as to be seen from such private premises, in a vulgar or indecent manner, or so to expose or exhibit his person in such place, or to go or be naked in such place. . .

As a criminal statute section 800.03 must be strictly construed. When the language of a statute is so plain and unambiguous as to fix the legislative intent and leave no room for construction, the courts should not depart from the plain language used by the legislature. *State*

**79**

*v Burnett,* 536 So.2d 375, 377 (Fla. 2d DCA 1988). Where interpretation of legislative intent is deemed necessary, a basic rule of construction is that criminal statutes are to be construed strictly in favor of the person against whom a penalty is to be imposed. *State v Llopis,* 257 So.2d 17 (Fla. 1971); *Norris v State,* 249 So.2d 746 (Fla. 4th DCA 1971). We find that the intent of the statute is beyond question, that it is unlawful for an individual to expose his sexual organs in a vulgar or indecent manner to the public.

Appellant's argument that one can do anything one wants to when in the confines of his home, even if such is an indecent activity which can be seen by the public is incorrect. Another rule of statutory construction is that courts will avoid an interpretation that would produce unreasonable, absurd, or ridiculous consequences; rather, statutes must be construed to effectuate the intent of the legislature. *Williams v State of Florida,* 492 So.2d 1051, 1054 (Fla. 1986).

The issue before us is whether, by his actions, Appellant transformed his private home into a "public place." When appellant stood before an uncovered sliding glass door with a public roadway fifteen feet away and exposed himself, he did so with the reasonable expectation of public view. We believe it is the probability of public view rather than how title to the real estate is held which renders a place public. The facts clearly show that defendant made no attempt to preserve his activities as private. Accordingly, we find that, under the circumstances, the defendant's home qualifies as a public place within the meaning of the statute. *See People v Legel,* 321 N.E.2d 164 (Ill. App.2d 1974).

Appellant also argues that the trial court erred by refusing to suppress evidence obtained by a warrantless search conducted with the aid of binoculars and the zoom lens of a camera. What a person knowingly exposes to the public even in his own home or office, is not the subject of Fourth Amendment protections. *Katz v United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Detective O'Neill repeatedly testified that he was able to make the observations without the use of binoculars, and that he used the binoculars and zoom lens for identification purposes only. Thus, the motion to suppress was correctly denied. *Florida v Riley,* 488 U.S. 445, 109 S.Ct. 1659, 102 L.Ed.2d 835 (1989).

AFFIRMED. OFTEDAL and RAPP, JJ., concur. STEVENSON, J., dissenting.

I must respectfully dissent from the well written Opinion of the majority. The actions described in the facts of this case are deplorable,

**80**

reprehensible and cannot be reconciled with any concept of decency in our community and our society. However, I cannot reconcile the legislature's use of the word "public place" with an interpretation which includes the private home of a citizen under the circumstances *sub judice.* The majority is correct when it notes that a criminal statute must be strictly construed in favor of the person against whom a penalty is to be imposed. A "public place" has been defined as follows

A place to which the general public has a right to resort . . . a place visited by many persons and usually accessible to the neighboring public (e.g. a park or public beach) . . . A place exposed to the public, and where the public gather together . . . BLACK'S LAW DICTIONARY 1107 (5th ed. 1979). The Court should not, by its ruling, prevent the legislature from revisiting this statute and correcting its deficiencies. It certainly would be an easy matter for the legislature to include in the statute language to the effect that a person shall not expose or exhibit his or her sexual organs in a private place in such a manner as to be seen by the casual observer situated in any other place, be it a public or private place.