565 So.2d 803 (1990)
STATE of Florida, Appellant,
v.
Tommy Reaben BENNETT, Appellee.
No. 89-02537.
District Court of Appeal of Florida, Second District.
July 25, 1990.
Rehearing Denied August 23, 1990.
*804 Robert A. Butterworth, Atty. Gen., Tallahassee, and Wendy Buffington, Asst. Atty. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender, and Andrea Steffen, Asst. Public Defender, Bartow, for appellee.
PER CURIAM.
The state appeals an order of the circuit court partially granting appellee Tommy Bennett's sworn motion to dismiss. Fla.R. Crim.P. 3.190(c)(4). The effect of the order is to reduce burglary charges against Bennett from a second degree (burglary of a dwelling) to a third degree felony (burglary of a structure). Finding the order to be based on an erroneous interpretation of the statutory definition of "dwelling," we reverse.
Bennett was one of three individuals apprehended while removing furniture from a mobile home which was located on a sales lot. This mobile home, apparently one among several models offered for sale, was fully furnished but unoccupied and not connected to utilities. The state charged Bennett with burglary of a dwelling. § 810.02, Fla. Stat. (1987). Bennett's motion to dismiss admitted that Bennett had participated in the break-in, but asserted that the structure in question did not qualify as a "dwelling" for purposes of enhancing the degree of the offense.
The common law definition of "dwelling," for purposes of a burglary prosecution, contemplated that a structure was actually occupied and not merely capable of or suitable for occupation. Smith v. State, 80 Fla. 315, 85 So. 911 (1920); Tukes v. State, 346 So.2d 1056 (Fla. 1st DCA 1977). It was generally viewed as immaterial whether the structure was a "mobile home" rather than a more traditional type of house. State v. Ryun, 549 S.W.2d 141 (Mo. App. 1977). See also, Kanaras v. State, 54 Md. App. 568, 460 A.2d 61 (1983) ("minimotorhome"); Luce v. State, 128 Tex.Crim. 287, 81 S.W.2d 93 (1935) (cabin constructed on auto chassis); State v. Ebel, 92 Mont. 413, 15 P.2d 233 (1932) ("movable sheep wagon"). However, under this definition an unoccupied mobile home on a sales lot would not qualify as a "dwelling." Graybeal v. State, 228 Va. 736, 324 S.E.2d 698 (1985).
In some jurisdictions this common law definition has been abandoned to permit a broader scope of prosecution for acts analogous to our crime of residential burglary. For example, Arkansas uses the term "occupiable structure," which is defined as any structure "customarily" used for the accommodation of persons. Ark.Stat.Ann. §§ 5-39-101(1)(c), -201(a) (1987). Under this provision an accused could be prosecuted and convicted for breaking into a mobile home which was vacant, unattached to utilities, and used only for a storage facility. Julian v. State, 298 Ark. 302, 767 S.W.2d 300 (1989). The Illinois statute, Ill. Rev. Stat. ch. 38, para. 2-6(b), includes in its definition of "dwelling" unoccupied living quarters which are intended for habitation within a reasonable period of time. See People v. Pearson, 183 Ill. App.3d 72, 131 Ill.Dec. 646, 538 N.E.2d 1202, appeal denied, 127 Ill.2d 633, 136 Ill.Dec. 600, 545 N.E.2d 124 (1989) (vacant residential property *805 into which new tenant planned to move in near future).
Florida, too, has amended its applicable statute. § 1, Ch. 82-87, Laws of Fla. Section 810.011(2), Florida Statutes (1989) now defines "dwelling" as "a building or conveyance of any kind, either temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof" (emphasis supplied). It is undisputed that this 1982 amendment is applicable to the present case, wherein the offense is alleged to have occurred between November 12 and 13, 1988. The state argues that this revised definition is broad enough to cover a mobile home on a sales lot, because it is "designed" for eventual human habitation. We agree that the present definition of "dwelling" significantly expands the common law definition.[1] Legislative staff analysis, which suggests the 1982 enactment was prompted by concern over burglaries of "unoccupied recreational vehicle[s] or travel trailer[s]," does not unequivocally establish whether unsold mobile homes were contemplated. However, the plain meaning of the word "designed" supports the state's argument.[2]
The trial court, in reducing the charge against Bennett, appears to have based its ruling exclusively upon the belief that the legislature did not intend to depart from prior case law narrowly defining "dwelling." Because we disagree with this conclusion, we cannot say as a matter of law that the state may not prosecute Bennett for residential burglary. We stop short, however, of holding that the amended statute justifies such a charge any time someone enters a structure that theoretically could serve as housing. A prefabricated "mobile home," while certainly capable of serving as someone's residence, can also be converted to any number of other uses, such as office space. When still on a sales lot, it may not always be possible to determine beforehand exactly what use a purchaser will make of such a structure. Therefore, in order to establish that the structure is a "dwelling" within the purview of the burglary statute, we believe the state must introduce some evidence that it is actually to be used for habitation. Given the rationale for the trial court's ruling, the record before us lacks an adequate factual basis for determining whether that burden has been met in the present case. We therefore remand for further proceedings consistent with this opinion.
Reversed.
SCHEB, A.C.J., and CAMPBELL and PATTERSON, JJ., concur.
NOTES
[1] We find only two post-amendment cases debating what sort of structure may constitute a "dwelling." Herbert v. State, 439 So.2d 971 (Fla. 1st DCA 1983), held that a motel room is a "dwelling" by virtue of section 810.011(2) as amended. On the other hand, in P.P.M. v. State, 447 So.2d 445 (Fla. 2d DCA 1984), we held that a vacant house was not a dwelling for purposes of the arson statute. Nowhere in Chapter 806 is there a definition of "dwelling" except the phrase "whether occupied or not" contained in section 806.01(1)(a). Thus the common law definition of "dwelling" continues to apply to arson prosecutions, and P.P.M. is inappropriate for analogy to burglary cases.
[2] "Fit, adapted, prepared, suitable, appropriate." Thomas v. State, 34 Okla. Cr. 49, 244 P. 816 (1926), quoted in Black's Law Dictionary 534 (Rev. 4th ed. 1968).